**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| RICKY PRIDGEON, | : | |
| | : | Civil No. 09-2310 (AET) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| MONMOUTH COUNTY JAIL, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

     RICKY PRIDGEON, #28268, Plaintiff <u>Pro Se</u>
     Monmouth County Correctional Institution
     1 Waterworks Road
     Freehold, New Jersey  07728

**THOMPSON,** District Judge:

     Ricky Pridgeon, a prisoner incarcerated at Monmouth County Correctional Institution ("MCCI"), filed a Complaint and an Amended Complaint claiming that the Asbury Park Police Department violated his Fourth Amendment rights by arresting him in June 2008 without probable cause.  This Court dismissed the Complaint and first Amended Complaint pursuant <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), with leave to file a second amended complaint.  Plaintiff thereafter filed a Second Amended Complaint naming 28 defendants and over one hundred John Does.  Having thoroughly reviewed Plaintiff's allegations, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the Second Amended Complaint, without prejudice to the filing of a third amended complaint.

## I.  BACKGROUND

Plaintiff's first Amended Complaint asserted violation of his Fourth Amendment rights by Monmouth County Jail, Monmouth County, and the Asbury Park Police Department.  He asserted the following facts:

> On 6/17/08 the County of [Monmouth] violated my Fourth Amendment by not showing probable cause for and arrest must do so as soon as is reasonably as 72 hours in which one year is unreasonably delay 6/8/09 also Monmouth County Jail on 6/16/08 accepted me without proper document to detain a person without a complaint warrant.  On 9/22/08 question warden about document of proof to justify arrest 1/20/09 I received a bail sheet of proof of arrest I requested proof Judge signature to justify incarceration 2/12/09 there was no results.  Also Asbury Park police department one or arrested me 6/16/08 illegally without probable cause or proof of an arrest warrant.  Violation of my Fourth and 14th Amendment of due process of the law.

(Docket entry #3 at p. 7.)

This Court dismissed the Amended Complaint on February 1, 2010, as follows:

> Plaintiff claims that the Monmouth County Jail and the Asbury Park Police Department violated his Fourth Amendment rights and 42 U.S.C. § 1983.  However, neither a jail nor a police department is a "person" which may be found liable under § 1983.  See Petaway v. City of New Haven Police Dept., 541 F. Supp. 2d 504, 510 (D. Conn. 2008); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 825-26 (D.N.J. 1993); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-894 (E.D. Va. 1992).  Although Monmouth County is a municipal entity that may be subject to suit under 42 U.S.C. § 1983, see Ryan v. Burlington County, NJ, 889 F. 2d 1286, 1289 n.1, 1290 (3d Cir. 1989), a municipal entity cannot be held liable under 42 U.S.C. § 1983 solely because it employs a tortfeasor.  See Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).  Rather, "it is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the

2

> injury that the government as an entity is responsible under §
> 1983."  Id.  Because Plaintiff's allegations do not show that the
> execution of a policy or custom adopted by the County of
> Monmouth County inflicted the constitutional injury, the
> Complaint fails to state a claim against the county and will be
> dismissed.  However, because Plaintiff may be able to state a
> cognizable claim under § 1983 by filing an amended complaint
> against the county and/or the individual(s) who allegedly caused
> violation of Plaintiff's constitutional rights, this Court will grant
> Plaintiff 30 days to file an amended Complaint.

(Docket Entry #8 at pp. 4-5.)

Plaintiff filed a Second Amended Complaint on February 5, 2010.  (Docket Entry #10.)
The named defendants include the City of Asbury Park; unnamed Asbury Park police officers;
the Monmouth County Prosecutor's Office; several named prosecutors; several non-attorney
officials employed by the Monmouth County Prosecutor's Office; public defenders; the
Monmouth County Sheriff; several officials at Monmouth County Correctional Institution;
several members of the Monmouth County Board of Chosen Freeholders; and one hundred
unnamed individuals.  Most of the 14-page Second Amended Complaint asserts legal and
unsupported factual conclusions indicating that Plaintiff was arrested in violation of the Fourth
Amendment, jail officials are confining him without legal authority, prosecutors are illegally
prosecuting him, public defenders are not properly representing him, and Asbury Park and
Monmouth County failed to properly train employees not to violate constitutional rights.  When
the legal and factual conclusions are excluded, Plaintiff's factual allegations amount to the
following:

> Ricky Pridgeon is 46 years old who currently resides at M.C.C.I. . .
> . and has been detained at M.C.C.I. since on or about June 16, 2008
> . . .

On June 16, 2008 Plaintiff was loading his truck with his tools on or about 7:35 pm.  He was approached by Detective Chapman and John Doe 1.  Detective Chapman told the Plaintiff that there was a secret indictment warrant and that he was being arrested.

A day later, June 17, 2008, the Plaintiff requested an initial appearance and a copy of the indictment warrant and/or complaint warrant that has never been produced.

Plaintiff was arrested and charged with sexual assault and endangering the welfare of a child (2C:14-2) (2C:14-3).  Plaintiff was held at Asbury Park Police Department for an hour, finger printed, mug shot taken, and transported to the Monmouth County Jail.

On information and belief Detective Chapman intentionally falsified documents in order to illegally arrest plaintiff.  The arrest of Plaintiff has caused mental and emotional distress.  The Plaintiff has been placed on medication to relieve the stress.

*                    *                    *

The Defendant's use of alternative means to arrest the plaintiff/petitioner then issued a certain type of charge against the plaintiff/petitioner for the sole purpose to be placed on a maximum security pod because by M.C.C.I. standard I fit the profile of a predator but with no criminal history, adult or juvenile.  This way I would never be able to go to a work pod in M.C.C.I. . . . .  I am in maximum custody and allegedly a security threat . . . The plaintiff/petitioner asks the honorable court to order the defendants to show the cause as to the validity of so many claims of security procedures and counts for justification . . .  I am in maximum security unit without surveillance cameras to stop or deter all the beatings and jumpings . . . .  When the officers are sometimes sleeping and/or napping on duty or taking 20 minute bathroom breaks, the pod is unattended.  The gangs wait and steal your things even attacking, threatening, and beating you in the same manner.

("SOCIAL SERVICES") has allowed county inmates, known as ("RUNNERS"), to deliver important information and documents to the selected units . . . without being monitored, supervised, and/or trained, therefore documents are just placed on a table in the pod where any other inmate can browse/read them.  The defendants

4

have violated my right to privacy by allowing other inmates to view my personal information and/or account status to inform other inmates that has placed me in severe danger . . .

On March 10, 2006 the plaintiff was illegally detained on an investigated detention order to take [a] swab (DNA).  Two detectives seized the plaintiff.  Neither detective had the detention order or search warrant in their possession issued by any judge, court, or magistrate authorizing detention or search.

On June 16, 2008 the defendants Richard Chapman and John Doe #1 illegally arrested the plaintiff/petitioner without probable cause and/or arrest warrant.  The plaintiff was transported to Asbury Park Police Department.

There at the Asbury Park Police Department the plaintiff was searched and finger printed, mug shots were tak[en] all without being placed under arrest and then transported to Monmouth County Jail and accepted without proper document required by custom and policies of county.

Neither of the defendants ("DETECTIVE CHAPMAN," "JOHN DOE 1") at the time of the above-mentioned arrest had in their possession the proper document (arrest warrant) issued by any judge, court, or magistrate authorizing an arrest.

June 17, 2008 after leaving "Booking" at M.C.C.I. without a complaint warrant signed by either a Superior or Municipal Judge or Criminal Case Manager as guaranteed by the Fourth Amendment of the State and Federal Constitution.

June 17, 2008 The Monmouth County Jail (known as M.C.C.I.) was to provide me with an initial appearance (72 hours) in front of a magistrate where I would be provided with a complaint warrant by the prosecutor, this being a violation of my Fourteenth Amendment Right to Due Process.

September 12, 2008 There was a complaint filed against Shelly Logan (appointed counsel) of the charge of misconduct and ineffective counsel (Municipal Court Judge Thomas F.X. Foley found probable cause (S-2008-000946), mistrust of client/counsel privilege by recklessly informing inmates with information about

my case, this being a violation of my Sixth Amendment Right to
Complete and Competent Counsel . . . .

September 22, 2008 Plaintiff filed grievance addressing Capt.
Fatagate and Warden Frasier to show proof to justify and show
cause for Plaintiff's arrest . . . .

The City of Asbury Park and The County of Monmouth County
(Freehold) as defendants each failed to use reasonable care in the
selection if its employees, agents, and servants and failed to
properly train and supervise the individual defendants and failed to
provide appropriate safeguards to prevent the illegal actions of
their agents . . . .

Asbury Park, the Asbury Park Police Department, and Kimmon
failed to train and supervise police officers employed by Asbury
Park Police Department in the proper procedures for investigating
incidents and making arrests . . . .

Monmouth County Prosecutor (Detective Division) and ("LT.
NATALIE ZUPPA") and ("MICHAEL PASTERCHICK JR")
failed to train and supervise county detectives employed by the
county in the proper procedures for investigating incidents and
making arrests . . . .

The county and ("LOUIS A. VALENTINE") failed to train and
supervise assistant prosecutors employed by the county in the
proper procedures for investigating incidents . . .

There was no probable cause to arrest Plaintiff, no underlining
complaint.

At the time of arrest, Defendants ("RICHARD CHAPMAN") and
("JOHN DOE 1") knew or should have known there was not a
complaint warrant and/or indictment warrant existing.

A reasonable police officer and/or detective making an arrest or
investigation knew or should have known that there was no warrant
or was to have in their possession at the time of arrest or 12 hours
thereafter.

On diverse dates from 2006 to 2007 the prosecution was
terminated favorably to plaintiff when there was never a complaint

6

> or participation of witnesses.  The investigation was
> administratively closed . . . .
>
> Prosecution of Plaintiff is a direct and continuous retaliation that
> has violated Plaintiff's Rights under the Fourth, Fifth, Sixth, and
> Fourteenth Amendments of the United States Constitution . . . .
>
> Plaintiff/Petitioner has been incarcerated a number of years without
> the proper documents . . . .

(Docket Entry #10 at pp. 2-12.)

For violation of his constitutional rights, Plaintiff seeks declaratory relief, injunctive relief and compensatory and punitive damages.  (Docket Entry #10 at pp. 13-14.)

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress from a governmental agent or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

Addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient

7

to pass muster under Rule 8.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir.

2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a
> plaintiff's obligation [is] to provide the 'grounds' of his
> 'entitle[ment] to relief' . . . ."  Twombly, 127 S. Ct. at 1964-65 . .
> . ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain
> statement [must] possess enough heft to 'sho[w] that the pleader is
> entitled to relief.'"  Id. at 1966.  [Hence] "factual allegations must
> be enough to raise a right to relief above the speculative level."  Id.
> at 1965 & n.3.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the Supreme Court in its recent decision

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than
> an unadorned ["]the-defendant-unlawfully-harmed-me["]
> accusation. [Twombly, 550 U.S.] at 555 . . . .  A pleading that
> offers "labels and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at 555.
> [Moreover,] the plausibility standard . . . asks for more than a sheer
> possibility that a defendant has acted unlawfully.  Id. [Indeed, even
> w]here a complaint pleads facts that are "merely consistent with" a
> defendant's liability, [the so-alleging complaint still] "stops short of
> [showing] plausibility of 'entitlement to relief.'"  Id. at 557
> (brackets omitted).  [A fortiori,] the tenet that a court must accept
> as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions [or to t]hreadbare recitals of the
> elements of a cause of action, supported by mere conclusory
> statements [, i.e., by] legal conclusion[s] couched as a factual
> allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement
> [or] that [defendants] adopted a policy "'because of,' not merely 'in
> spite of,' its adverse effects upon an identifiable group." . . . . [W]e
> do not reject these bald allegations on the ground that they are
> unrealistic or nonsensical. . . .  It is the conclusory nature of [these]
> allegations . . . that disentitles them to the presumption of truth. . . .
> [Finally,] the question [of sufficiency of] pleadings does not turn
> [on] the discovery process.  Twombly, 550 U.S. at 559 . . . . [The
> plaintiff] is not entitled to discovery [where the complaint asserts

8

some wrongs] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was applied to federal complaints before Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  Since Iqbal, the Third Circuit has required the district courts to conduct, with regard to Rule 8 allegations, a two-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129 S. Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show*[*n*]*'-'that the pleader is entitled to relief*.'"  Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

---

[1]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. at 45-46.

9

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007). With these precepts in mind, the Court will determine whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III.  DISCUSSION

Section 1983 authorizes a person to seek redress for a violation of his or her federal rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

A.  Unconstitutional Arrest and Imprisonment

Plaintiff complains that certain defendants violated his Fourth Amendment rights by taking a DNA swab on March 10, 2006, by arresting him on June 16, 2008, for sexual assault and endangering the welfare of a child on the basis of falsified documents and without an arrest warrant signed by a judge or criminal case manager, and by thereafter imprisoning him at MCCI.

The Fourth Amendment provides:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

"[W]hen an officer has probable cause to believe a person committed even a minor crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable."  Virginia v. Moore, 553 U.S. 164, 171 (2008).  "To find that there was an unlawful arrest in violation of the Fourth Amendment, the jury need only have found that under the facts and circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested."  Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010).  "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false."  Hughes v. Meyer, 880 F. 2d 967, 969 (7th Cir. 1989).  Accordingly, the Fourth Amendment does not necessarily require the issuance of an arrest warrant prior to arrest (and imprisonment pursuant to that arrest), but prohibits a police officer from arresting a citizen without probable cause that the person has committed or is committing a crime.  Cf. Albright v. Oliver, 510 U.S. 266, 274-75 (1994).

In this case, Plaintiff attempts to assert two Fourth Amendment arrest claims.  He insinuates that defendants violated his Fourth Amendment rights on March 10, 2006, by requiring him to submit a swab for DNA testing.  This claim fails for two reasons.  Assuming

11

*arguendo* that this constitutes a seizure or a stop, Plaintiff does not provide facts to support the conclusion that officials lacked probable cause or reasonable suspicion.  See Iqbal, 129 S. Ct. at 1949-54.  Moreover, insofar as the alleged seizure/stop occurred in March 2006 and Plaintiff did not execute the initial Complaint in this matter until three years later in May 2009, such a claim is barred by the two-year statute of limitations applicable to § 1983 claims.  See Wallace v. Kato, 549 U.S. 384 (2007); Hunterson v. DiSabato, 244 Fed. App'x. 455 (3d Cir. 2007); Bethel v. Jendoco Const. Corp., 570 F. 2d 1168, 1174 (3d Cir. 1978).

Plaintiff also claims that on June 16, 2008, defendants arrested him for sexual assault and endangering the welfare of a child without an arrest warrant issued by a court, that Detective Chapman intentionally falsified documents in order to arrest him, and that officials at MCCI unconstitutionally imprisoned him pursuant to this false arrest.  The defect in these allegations is that Plaintiff does not assert facts supporting the  conclusion that Chapman lacked probable cause to arrest Plaintiff on June 16, 2008.  For example, Plaintiff does not indicate what documents Chapman allegedly falsified, what those alleged falsifications were, or what other facts were known to Chapman with respect to Plaintiff's involvement in a crime.[2]  The Iqbal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . .  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . .  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  Moreover, Plaintiff's allegations indicate that he was arrested after a

---

[2] For example, if Chapman knew that Plaintiff's DNA matched the DNA found on the victim, then this would likely satisfy the probable cause standard for arrest.

12

grand jury returned an indictment and, as explained below, the return of an indictment satisfies the probable cause requirement for an arrest.  See infra at section III.B.  In the absence of factual allegations showing the absence of probable cause for Plaintiff's arrest for sexual assault or endangering the welfare of a child, the Second Amended Complaint fails to state a Fourth Amendment seizure claim based on Plaintiff's arrest that satisfies the Iqbal standard.  This Court will accordingly dismiss the claims for false arrest and false imprisonment at MCCI for failure to state a claim upon which relief can be granted.  However, because Plaintiff may be able to assert facts demonstrating the absence of probable cause or an indictment prior to arrest on June 16, 2008, the dismissal of the false arrest/false imprisonment claim is without prejudice to the filing of a third amended complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

## B.  Probable Cause Hearing

Plaintiff complains that certain defendants violated his constitutional rights by depriving him of a probable cause hearing within 72 hours of arrest and incarceration.  To be sure, the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.  See Gerstein v. Pugh, 420 U.S. 103, 114 (1975).  However, Plaintiff's assertion in the Second Amended Complaint that he requested a copy of the indictment on June 17, 2008, indicates that a grand jury returned an indictment against Plaintiff prior to his arrest.  Because an indictment "returned by a properly constituted grand jury, conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry," the failure to provide a probable cause hearing did not in and of

13

itself violate Plaintiff's rights under the Fourth Amendment.[3]  See Gerstein, 420 U.S. at 118 n.19;

see also Giordenello v. United States, 357 U.S. 480, 487 (1958) ("A warrant of arrest can be

based upon an indictment because the grand jury's determination that probable cause existed for

the indictment also establishes that element for the purpose of issuing a warrant for the

apprehension of the person so charged.  Here, in the absence of an indictment, the issue of

probable cause had to be determined by [a judge]"); United States v. Contreras, 776 F. 2d 51, 54

(2nd Cir. 1985) ("the return of an indictment eliminates the need for a preliminary examination at

which a probable cause finding is made by a judicial officer").  Accordingly, Plaintiff's § 1983

claim based on failure to conduct a probable cause hearing within 72 hours of arrest will be

dismissed for failure to state a claim upon which relief can be granted.

C.  Malicious Prosecution

    This Court construes Plaintiff's allegations as an attempt to assert a constitutional

malicious prosecution claim.  A claim of malicious prosecution for a particular crime under §

1983 "alleges the abuse of the judicial process by government agents."  Gallo v. City of

Philadelphia, 161 F.3d 217, 225 (3d Cir. 1998).  "To prove malicious prosecution under section

1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the

defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the

defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or

for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation

---

[3] New Jersey Court Rule 3:4-3(a) provides: "If the defendant does not waive a hearing as
to probable cause and if before the hearing an indictment has not been returned against the
defendant with respect to the offense charged . . . , a judge of the Superior Court shall hear the
evidence offered by the State within a reasonable time and the defendant may cross-examine
witnesses offered by the State."  N.J. Ct. R. 3:4-3(a).

of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

Johnson v. Knorr, 477 F. 3d 75, 81-82 (3d Cir. 2007) (footnote omitted); see also Hartman v.

Moore, 547 U.S. 250 (2006).

Plaintiff's allegations are insufficient to assert a malicious prosecution claim because he

does not assert facts satisfying every element of the claim.  Plaintiff fails to assert facts showing

the absence of probable cause, and the facts set forth in the Second Amended Complaint indicate

that Plaintiff was arrested on the basis of an indictment (establishing probable cause for the

arrest).  Moreover, nothing in the Amended Complaint indicates that the prosecution for sexual

assault and endangering the welfare of a child terminated in his favor.[4]  Under these

circumstances, his malicious prosecution claim will be dismissed without prejudice for failure to

state a claim upon which relief may be granted.  See Baker v. Wittevrongel, 363 Fed. App'x 146

(3d Cir. 2010); Kossler v. Crisanti, 564 F. 3d 181, 186-87 (3d Cir. 2009).

C.  Conditions of Confinement

Plaintiff complains that he has been unconstitutionally confined in the maximum security

unit of MCCI, that beatings and jumpings have occurred on the unit, that there are no

surveillance cameras on the unit, that officers on duty have at times taken naps and bathroom

breaks, and that gang members in the unit have stolen property from inmates and attacked

inmates.  This Court construes these allegations as an attempt to state a conditions of

_____

[4] Without factual support, Plaintiff broadly claims that the prosecution was terminated
favorably on various dates in 2006 and 2007.  In accordance with Iqbal, this Court has
disregarded this legal conclusion.  If Plaintiff elects to file a third amended complaint stating a
malicious  prosecution claim, he must include specific facts showing that the criminal proceeding
terminated in his favor.  "[A] prior criminal case must have been disposed of in a way that
indicates the innocence of the accused in order to satisfy the favorable termination element."
Kossler v. Crisanti, 564 F. 3d 181, 187 (3d Cir. 2009).

confinement claim under the Due Process Clause of the Fourteenth Amendment and the standard

set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement

amounted to punishment prior to an adjudication of guilt.

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial

detainee prior to an adjudication of guilt in accordance with due process of law.[5]  See Bell v.

Wolfish, 441 U.S. at 535; Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005).  As the Supreme

Court explained,

> [I]f a particular condition or restriction of pretrial detention is
> reasonably related to a legitimate governmental objective, it does
> not, without more, amount to "punishment."  Conversely, if a
> restriction or condition is not reasonably related to a legitimate
> goal - if it is arbitrary or purposeless - a court permissibly may
> infer that the purpose of the governmental action is punishment
> that may not constitutionally be inflicted upon detainees qua
> detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at

times require "limitation or retraction of . . . retained constitutional rights."  Bell, 411 U.S. at

546.  "Restraints that are reasonably related to the institution's interest in maintaining jail

security do not, without more, constitute unconstitutional punishment, even if they are

discomforting and are restrictions that the detainee would not have experienced had he been

---

[5] "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."  Bell v. Wolfish, 441 U.S. 520, 537, n.16 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977)); see also  City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

released while awaiting trial." Id. at 540.  "In assessing whether the conditions are reasonably

related to the assigned purposes, [a court] must further inquire as to whether these conditions

cause [inmates] to endure [such] genuine privations and hardship over an extended period of

time, that the adverse conditions become excessive in relation to the purposes assigned to them."

Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d

984, 992 (3d Cir. 1983)); see also Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007) ("a

particular measure amounts to punishment when there is a showing of express intent to punish on

the part of detention facility officials, when the restriction or condition is not rationally related to

a legitimate non-punitive government purpose, or when the restriction is excessive in light of that

purpose") (citation and internal quotation marks omitted).

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth

Amendment's cruel and unusual punishments standard, contains both an objective component

and a subjective component:

> Unconstitutional punishment typically includes both objective and
> subjective components.  As the Supreme Court explained in
> Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component
> requires an inquiry into whether "the deprivation [was] sufficiently
> serious" and the subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . .
> The Supreme Court did not abandon this bipartite analysis in Bell,
> but rather allowed for an inference of mens rea where the
> restriction is arbitrary or purposeless, or where the restriction is
> excessive, even if it would accomplish a legitimate governmental
> objective.

Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007).

In this Second Amended Complaint, Plaintiff complains that he is confined in the

maximum security unit of MCCI.  However, in the absence of facts showing that Plaintiff was

17

subjected to genuine privation and hardship over an extended period of time, his confinement in

a maximum security unit does not violate Due Process.  See Bell, 441 U.S. at 542 (confining

pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship

over an extended period of time might raise serious questions under the Due Process Clause as to

whether those conditions amounted to punishment"); Hutto v. Finney, 437 U.S. 678, 686-87

(1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets

constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a

few days and intolerably cruel for weeks or months"); Hubbard, 538 F. 3d at 235 (holding that

triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because

the inmates "were not subjected to genuine privations and hardship over an extended period of

time"); Piskanin v. Hammer, 269 Fed. App'x 159, 162-63 (3d Cir. 2008) (placement of pretrial

detainee on suicide watch for brief six day period, during which time he could not contact

counsel or file a habeas petition, did not amount to punishment prior to adjudication of guilt);

Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in

maximum security did not violate due process).

Plaintiff further alleges that beatings and jumpings have occurred on his unit, there are no

surveillance cameras on the unit, officers on duty have at times taken naps and bathroom breaks,

and gang members in the unit have stolen property from inmates and attacked inmates.  Prison

officials have a constitutional duty to "take reasonable measures to guarantee the safety of the

inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S.

517, 526-7 (1984)).  To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must

show that he is objectively "incarcerated under conditions posing a substantial risk of serious

harm" and that the named defendant subjectively knows of and disregards that risk.  See Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

As written, Plaintiff's claim fails to satisfy either the objective element or the subjective element.  Plaintiff does not show that he was incarcerated under conditions posing a "pervasive risk of harm."  Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  Id.  Plaintiff does not specifically describe the circumstances of even one prior incident of violence toward himself or another inmate.  Plaintiff's allegations do not satisfy the Iqbal standard with respect to showing that he faced an excessive risk of assault from other inmates, as they fall "short of alleging that the risk to which he was purportedly subjected was substantial."  Day v. Federal Bureau of Prisons, 233 Fed. App'x. 132, 134 (3d Cir. 2007).

Plaintiff's allegations likewise fail to satisfy the subjective component of a failure-to-protect claim.  An individual defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiff does not assert facts showing that the named individual defendants participated in violating his constitutional rights.  See Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").  Moreover, Plaintiff does not assert that the named individual defendants knew that Plaintiff faced an excessive risk

19

of assault, or "that a substantial risk of . . . attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842. Because Plaintiff's allegations do not show that the named defendants knew of and disregarded an excessive risk to his safety, the Court is constrained to dismiss the failure-to-protect claim. However, because Plaintiff's allegations do not foreclose the possibility that one or more jail officials were deliberately indifferent to a known excessive risk of assaults, or that he suffered genuine privations or hardships, the dismissal is without prejudice to the filing of a third amended complaint that includes a cognizable failure-to-protect and/or conditions of confinement claim.

D.  Ineffective Assistance of Counsel

Plaintiff complains that on September 12, 2008, he filed a complaint against Shelly Logan, appointed counsel, for misconduct and ineffective assistance. This claim will be dismissed with prejudice because Logan was not acting under color of state law. See Polk County v. Dodson, 454 U.S. 312 (1981) (a public defender, though paid and ultimately supervised by the state, does not act under color of state law when performing the traditional functions of counsel to a criminal defendant); Angelico v. Lehigh Valley Hospital, Inc., 184 F.3d 268, 277 (3d Cir. 1999) (private attorneys were not acting under color of state law when they issued subpoenas); Black v. Bayer, 672 F.2d 309 (3d Cir. 1982) (private attorney representing criminal defendant under court appointment is not acting under color of state law).

20

E.  Claims against Asbury Park and Monmouth County

Nor does the Second Amended Complaint state a claim against the City of Asbury Park or the County of Monmouth.[6]  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).  A policy is made when a decisionmaker possessing final authority to establish policy with respect to the action issues a policy or edict.  Id. at 584.  A custom is an act that has not been formally approved by the policymaker but that is so widespread to have the force of a rule or policy.  Id.  In this Complaint, Plaintiff does not assert facts showing that a violation of his constitutional rights resulted from the execution of a custom or policy of Asbury Park or Monmouth County.  This Court will accordingly dismiss the claims against those entities without prejudice for failure to state a claim upon which relief may be granted.

Because Plaintiffs' Second Amended Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 129 S. Ct. at 1949, and does not plead factual content that allows this Court to draw the reasonable inference that the named defendants are liable for violation of his constitutional rights, this Court is

---

[6] Plaintiff also sues Monmouth County Jail and the Asbury Park Police Department, but neither a jail nor a department is a "person" that may be found liable under § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978).  See Petaway v. City of New Haven Police Dept., 541 F. Supp. 2d 504, 510 (D. Conn. 2008); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 825-26 (D.N.J. 1993); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-894 (E.D. Va. 1992).

constrained to dismiss the Second Amended Complaint pursuant to 28 U.S.C. § 1915A(b) for

failure to state a claim upon which relief may be granted.

## IV.  CONCLUSION

For the reasons set forth above, the Court dismisses the Second Amended Complaint

without prejudice to the filing of a third amended complaint.  An appropriate Order accompanies

this Opinion.


    */s/ Anne E. Thompson*
    **ANNE E. THOMPSON, U.S.D.J.**

Dated: December 16, 2010

22